## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Stefani Butler** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No.: 1:24-cv-01134 |
| v. | ) | |
| | ) | |
| | ) | |
| **District of Columbia,** *et al.* | ) | |
| Defendants | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN ALTERNATIVE, MOTION TO DISMISS

**COMES NOW** Plaintiff, Stefani Butler (hereinafter "Ms. Butler"), by and through counsel, hereby submits this memorandum in support of her opposition to Defendant's, District of Columbia's ("The District") Motion to Dismiss.

## STATEMENT OF FACTS

Ms. Butler brings this action to recover damages for violations of federal and local civil rights laws, and for the District's (by way of the Department of Employee Services) failure to pay overtime.

Ms. Butler's immediate supervisor, Mr. Corey Dixon, created and maintained a sexually degrading hostile work environment for several months until his departure from the agency. Mr. Dixon was known by several employees to consume alcohol while working. He would frequently use vulgar and sexist language, often calling women in the office "bitches." He would frequently contact Ms. Butler while she was off work, sometimes late in the evening, to invite her to his home, to drink wine with him, and to get a massage. Mr. Dixon would additionally instruct Ms.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

Butler to "fix the blinds" in his office so he could leer at her body while also instructing her to wear more revealing clothes to work.

Ms. Butler reported Mr. Dixon's behavior to the agency on multiple occasions, which went unanswered. After Ms. Butler repeatedly reported Mr. Dixon's conduct, Mr. Dixon retaliated against Ms. Butler by excluding her from trainings, emails, and strategy meetings to support her role with the agency. Mr. Dixon would then reprimand Ms. Butler for not knowing what was discussed in the meetings from which he excluded her. Ms. Butler repeatedly requested that the agency transfer her from the direction of Mr. Dixon. Ms. Butler was never transferred. Instead, she remained under the direction of Mr. Dixon, despite her multiple complaints against him until his unrelated departure. The agency never took action to protect her from Mr. Dixon. The agency never took action to correct or discipline Mr. Dixon.

Additionally, Ms. Butler was one of many DOES employees who were not properly compensated for overtime hours in 2021. This prompted Councilmember Elissa Silverman to write to the D.C. Department of Human Resources to request an audit of DOES' payroll practices. In response, DOES reviewed its payroll practices, and the D.C. Department of Human Resources acknowledged that the "District paid five [unnamed] employees … at an incorrect overtime rate." Moreover, the District blamed the "incorrect overtime rate" on a software issue and claimed that the employees were paid, but not at the lawfully required 1.5 overtime rate.

This is incorrect as Ms. Butler was one of the employees who was not paid at all for her overtime hours – not even at a miscalculated rate as alleged by the District. More concerningly, after Ms. Butler complained about the agency's failure to pay her overtime in the spring of 2021, she was berated by Mr. Dixon. When she continued to complain about her missed overtime pay in the fall of 2021, she was terminated.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

## PROCEDURAL HISTORY

Plaintiff exhausted administrative remedies by filing an action in the DC Office of Human Rights (DC OHR) and receiving a Notice of Right to Sue letter on January 24, 2023. Thereafter, Ms. Butler filed this instant action on April 18, 2024. (ECF 1).

Ms. Butler served the District on May 13, 2024, setting the statutory deadline to respond to the Complaint on June 3, 2024. (ECF 5). On June 3rd, Defendant moved this Court for an extension of time to file response. (ECF 7). On July 12th, Defendant filed a Partial Motion to Dismiss the Complaint. (ECF 12). On July 26th, Ms. Butler amended her complaint. (ECF 14). On August 19, the District again moved this Court to partially dismiss the Complaint.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979), aff'd on reh'g, 628 F.2d 199 (D.C. Cir. 1980) (internal quotations omitted) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.").

A complaint needs only to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff needs to show "more

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

than a sheer possibility that a defendant has acted unlawfully," a plaintiff is not required to meet a "probability requirement" to survive a motion to dismiss. *Id*.

Thus, the Defendants must prove that that Plaintiff's complaint does not allow this Court to "draw the reasonable inference that the [Defendants are] liable for the misconduct" for dismissal to be appropriate. *Id*. This Court should not determine "whether [Plaintiff] will ultimately prevail" at this stage but should only consider "whether [Plaintiff] is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 511 (2002).

## LEGAL ARGUMENT

I. **The Defendants' Motion Must be Denied Because Plaintiff Properly and Sufficiently Pled Retaliation Under Both Title VII and DC Human Rights Act.**

In order to establish a prima facie case of retaliation, a plaintiff must show that she: "(1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a causal connection between the two." *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).

a) *Ms. Butler Pled that She Suffered a Material Adverse Action.*

"An activity is protected for the purposes of a retaliation claim if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Lemmons v. Georgetown Univ. Hosp.,* 431 F.Supp.2d 76, 91 (D.D.C.2006) (internal citations omitted). Ms. Butler clearly engaged in protected activity when she complained about her manager's, Corey Dixon's, sexual harassment. *Compl*. at ¶¶ 11-27.

The District acknowledges that Ms. Butler pled that she complained about the sexual harassment in May of 2021. The District also acknowledges that Ms. Butler pled that after her

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

complaint, Mr. Dixon then "excluded [her] from trainings, emails, and strategy meetings to support her role with the agency." *Def*. Mot. at 6. The District's primary argument focuses only on the subject of her complaint excluding her from meetings. The District then seeks dismissal of the retaliation claim because, in its narrow view, Ms. Butler failed to allege how important the meetings were to her position with the agency.[1]

This view is conflicts with the current jurisprudence. The United States Supreme Court has long held that when pleading adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). (internal citation omitted). In justifying a material adversity standard, the Court held it "important to separate significant from trivial harms," because Title VII "does not set forth 'a general civility code for the American workplace." *Id*., 67-68 [126 S.Ct. 2405].

Here, Ms. Butler properly pled that Mr. Dixon removed her from strategy meetings because she complained about his sexual harassment. *Compl*. ¶36. Moreover, Ms. Butler pled that these strategy meetings supported her role with the agency. *Id*. Notwithstanding the District's argument that Ms. Butler did not detail the importance of the strategy meetings, she in fact, averred that the meetings were significant enough that the Mr. Dixon reprimanded her for missing the very meetings from which he excluded her. *Id*. at 38. The District failed to reconcile its contention that Ms. Butler did not sufficiently detail the significance of the meetings when her

---

[1] Defendant argues that Ms. Butler failed to "describe the alleged purposes of these meetings; she does not claim that they were critical to her job duties; and she does not allege that her exclusion from these meetings affected her job performance." Def. Mot. at 5.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

forced absence led to reprimand. A reasonable inference would suggest that "strategy meetings" "to support her role with the agency" were material to her employment with the agency.

There is no lawfully recognized requirement for Ms. Butler to detail that adverse employment action "interfered with her job performance," as the District contends. *Def*. Mot. at 7. A reasonable inference

Lastly, the District's attempt to divorce the strategy meetings from the other examples of adverse actions is a futile strategy to mislead the Court. In full, Ms. Butler averred that "[a]fter the complaint, Mr. Dixon began retaliating against Ms. Butler. Mr. Dixon would exclude Ms. Butler from trainings, emails, and strategy meetings to support her role with the agency." *Compl*. ¶36. Th District audaciously argues that Ms. Butler's exclusion from trainings, emails, and strategy meetings all cannot establish adverse employment action because Ms. Butler does not explain every item in detail. Assuming arguendo, this argument suggests that Ms. Butler could not establish a claim had she listed every line item in her job description from which she was prevented. The collection of decisions alone indicates material adversity and the fact that she was reprimanded for suffering an adverse employment action demonstrates that the actions – in totality – were designed to discourage her opposition to sexual harassment.

b) *This Court must deny the Defendant's Motion to Dismiss Because Ms. Butler established a connection between Defendants' adverse action and her protected activity.*

Causal nexus to support a Title VII retaliation claim may exist when a protected activity and adverse personal action occur within a time from which a retaliatory motive can be inferred. *Lancaster v. Vance-Cooks*, 967 F. Supp. 2d 375 (D.D.C. 2013).

The District's argument that Ms. Butler failed to establish a causal nexus because she did not plead when she was excluded from the trainings, emails, and strategy meetings is untenable.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

Ms. Butler satisfied the requirement of pleading that the adverse actions started after she complained about the sexual harassment when she stated **"[a]fter the complaint**, Mr. Dixon began retaliating against Ms. Butler…." *Compl*. ¶36. (emphasis added).

Moreover, Ms. Butler pled that she complained about Mr. Dixon to the agency's deputy director on May 26th and June 4th 2021. *Id*. at ¶¶29-30. Thereafter, she sent at least three follow-up emails regarding Mr. Dixon's behavior. *Id*. at ¶31. There was no action on the complaint before it was sent to the agency's general counsel nearly three weeks later. *Id*. at 32. Then, Mr. Dixon began retaliating by excluding her from trainings, emails, and strategy meetings. *Id*. at ¶36. It is clear from the face of the complaint that the adverse action was proximate to, and because of, the complaint. For this reason, this Court must deny the Defendants' converted motion.

II.      **Defendants' Motion Must Fail Because Ms. Butler Properly Pled That the District Willfully Failed to Pay Overtime Hours, Which Set the Statute of Limitations to Bring A Claim for FLSA to Three Years.**

Any action under the FLSA "to enforce any cause of action for unpaid minimum wages" or "unpaid overtime compensation" must "be commenced within two years after the cause of action accrued, ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 USC § 255(a). A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). In this context, "willful" is synonymous with "voluntary," "deliberate," and "intentional." *McLaughlin*, 486 U.S. at 135, 108 S.Ct. at 1682.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

"[T]he word 'willful' refers to conduct that is 'voluntary,' 'deliberate,' or 'intentional,' and not merely negligent." *Id. at* 128. Courts have held that although the conduct must be more than negligence, the Plaintiff is not required to plead that it was egregious. *Stone v. Troy Constr., LLC*, 935 F.3d 141, 148 (3d Cir. 2019) ("While the District Court did not explicitly state that Stone had to demonstrate that Troy's actions were worse than reckless, that is what it in effect required. The District Court was evidently looking for something egregious. But any requirement for a degree of egregious behavior conflicts directly with another Supreme Court precedent.") In *Stone*, the Third Circuit alludes to a 1993 U.S. Supreme Court decision which held that an "employee need not additionally demonstrate that the employer's conduct was outrageous," to demonstrate willfulness. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

Here, Ms. Butler sufficiently pled that a) the District failed to pay her for her overtime hours; b) on several occasions she complained to the District about her missing overtime payment; c) the District continued to withhold her overtime payment; and d) the District terminated her after her final complaint. Under no reasonable, objective reading can these set of facts possibly fail to establish that the District's conduct was not willful.

In her complaint, Ms. Butler addressed that she first discovered the missing overtime payment in May of 2021. *Compl*. at ¶42. Upon discovery, she immediately reported it to the agency. *Id*. After reporting it, her supervisor – with knowledge of the non-payment – berated her by instructing her to "keep your damn mouth shut about the overtime." *Id*. This alone demonstrates that the employer was aware of the non-payment of overtime hours and "voluntarily," "deliberately," and "intentionally" continued to violate the FLSA by continuing to not pay the missing hours. *McLaughlin*, at 128.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

Moreover, Ms. Butler continued to work overtime for the District, who continued – with knowledge of existing nonpayment – to fail to pay overtime. *Compl*. at ¶60. Ms. Butler again reported to her superiors that she was not being paid the overtime rate for the overtime hours that she worked. *Id*. at ¶61. On two occasions, the District incorrectly adjusted Ms. Butler's overtime hours, after it had knowledge of these hours. *Id*. at ¶62. Ms. Butler's supervisor even antagonized her about waiting to be paid overtime. *Id*. at ¶64. Finally, on November 29, 2021, Ms. Butler sent a written complaint about "Ms. Madison's **intentional** failure to pay overtime hours." *Id*. at 66. Two days later, the District terminated her. *Id*. at ¶68 (emphasis added).

Ms. Butler even wrote at length that the District's conduct violated the FLSA. *Compl*. at ¶67. Specifically, Ms. Butler wrote "[t]he agency currently owes me overtime for October and November 2021. In addition to 64 previous hours converted from *overtime* to *straight pay*, and 8 hours converted from *holiday* to *straight pay*." *Id*. She continued, "Overtime shall be paid in accordance with Title XVII and the Fair Labor Standards Act of 1938, approval June 25, 1938 (52 stat. 1060; 29 U.S.C. 201 et seq.)." *Id*. It is unclear how the District can contend it did not act willfully when Ms. Butler notified it of its conduct with this degree of specificity.

On its face, the complaint sufficient pleads that the District acted willfully in refusing to pay Ms. Butler's overtime hours. The District does not even attempt to address this litany of accusations in its argument. Instead, its exclusive focus is placed on a single allegation that "[i]n March of 2022, approximately three months after the agency terminated Ms. Butler, the agency paid Ms. Butler three payments, approximately totaling $6,000." *Compl*. at ¶72. The District argues that these payments "acknowledged and responded to Plaintiff's concerns about her overtime pay, the District's actions cannot be construed as willful violations of the FLSA." *Def*. Mot. at 9.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

This contention is woefully misleading. First, the District ignores that "[n]o paystubs or statement of hours were provided to Ms. Butler." *Compl*. at ¶73. Because no information was provided regarding these payments, Ms. Butler "does not know the reason for these payments; whether they are overtime payments, and if so, how much overtime they purport to cover." *Id*. at ¶74. The District failed to address this in its motion. Furthermore, "the agency has not provided any explanation, whatsoever, for this payment, whether the payment was taxed, or any other information." *Id*.

Secondly, the District failed to address that "Ms. Butler is still owed unpaid overtime wages but does not know how much she is owed or the amount of overtime hours due to the District's failure to provide this information." *Id*. at ¶75.

Lastly, the District failed to reconcile how unidentified payments three months after termination shows that the District did not willfully fail to pay her initially. The District offers no explanation why it contends that it did not originally act willfully in refusing to pay Ms. Butler, when it knew that Ms. Butler was not paid hundreds of overtime hours and complained about it for months. The District completely ignores allegations that Ms. Butler's supervisor antagonized her about not paying her overtime. In no reasonable view of the complaint can it be argued that the District did not act willfully.

Accordingly, the statute of limitations to bring this FLSA claim is three years from the date of her final complaint about the continuing violation, November 29, 2021. Therefore, the deadline to bring action is November 29, 2024. Ms. Butler timely filed this action.

### III. Defendants' Motion Must Fail Because Ms. Butler Properly Pled that She Engaged in Protected Activity When She Was Terminated For Complaining About Her Overtime Payments.

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

To state a prima facie case of retaliation under the FLSA, "a plaintiff is required to show that (1) [s]he made an FLSA complaint or otherwise engaged in protected conduct; (2) the defendant was aware that he had engaged in protected activity; (3) the defendant took an action that was materially adverse to the complainant and sufficient to dissuade a reasonable employee from further protected activity; and that (4) there was a causal relationship between the two." *Del Villar v. Flynn Architectural Finishes, Inc.*, 893 F.Supp.2d 201, 213 (D.D.C.2012). "A plaintiff may establish that she engaged in statutorily protected activity by showing that she made an appropriate written or oral complaint to a government agency […] or by showing that she made such a complaint to her employer." *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 56 (D.D.C. 2015) (internal citations removed).

In its motion, the District accurately provides the prima facie elements to establish a claim for FLSA retaliation. Specifically, it provides that "To state a prima facie claim of retaliation under the FLSA, a plaintiff is required to show that (1) [s]he made an FLSA complaint or otherwise engaged in protected conduct…." *Def's* Mot. at 10. However, curiously, it neglects to mention – in any way whatsoever – whether Ms. Butler engaged in protected conduct. Instead, it exclusively argues that she fails to state a claim for FLSA retaliation because she did not "notif[y] the District that she filed a complaint or instituted a proceeding against the District for any alleged FLSA violation." *Id*. at 11.

This Court can see from the Defendant's own citations that this argument is insufficient and attempts to mislead the Court. Ms. Butler engaged in protected activity each and every time she "made an appropriate written or oral complaint" to her agency and to her "employer." *Benton*. Ms. Butler alleged that she complained over several months to several supervisors, human resources officer, and the agency's general counsel. *Compl*. at ¶¶42, 60-67. The District

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

does not attempt to acknowledge these actions or even disprove that Ms. Butler engaged in

protected activity. It ignores the very possibility of protected activity altogether. Because Ms.

Butler alleged that she was terminated for engaging in protected activity, her FLSA claim must

survive.


## Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied in full.

### Plaintiff Requests Hearing on This Motion

Respectfully Submitted,

Robert Baldwin III, Esq. (Bar No. 90002020)
Virtue Law
1250 Connecticut Ave, Suite 700
Washington D.C., NW 20036
Robert@virtuelawgroup.com
*Counsel for Plaintiff*

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of August 2024, a copy of the foregoing Opposition to the Defendant's Motion to Dismiss was served via electronic mail upon the following:

Brian L. Schwalb, Attorney General for the District of Columbia;

Stephanie E. Litos,  Deputy Attorney General for the District of Columbia;

Christina Okereke, Chief of Civil Litigation Division Section II; and

Samantha N. Lewis, Assistant Attorney General

400 6th Street, NW

Washington DC, 20001

*Counsels for the Defendant, District of Columbia*

Respectfully Submitted,

Robert Baldwin III, Esq.
Bar No. 90002020
Virtue Law
1250 Connecticut Ave, Suite 700
Washington D.C., NW 20036
T: (301) 821-6407
Robert@virtuelawgroup.com
*Counsel for Plaintiff*

Butler v. District of Columbia, et al.
Plaintiff's Opposition to Partial Motion to Dismiss